HAZLETT v. POLLACK STOGIE CO. et al.

(Circuit Court, W. D. Pennsylvania. June 20, 1911.)

1. TRADE-MARKS AND TRADE-NAMES (§ 85*)—INFRINGEMENT—RIGHT TO SUE—
DECEIT OF PUBLIC.

Decedent during his lifetime had built up a large and profitable business in stogies, which were sold under his name and became known as "Pollack's Stogies"; the word "Pollack" alone becoming generally connected with cigars made by him. Among other distinctive marks used on his packages was a guaranty signed in script over his reproduced signature and the factory certificate which also stated that decedent was the manufacturer, and on the front of his factory, which constituted his principal trade-mark, was decedent's name as manufacturer. Two years after his death, complainant, who succeeded him, sent out a letter to the trade printed in script and purported to be signed by decedent, calling attention to the development of the business and soliciting continued favorable consideration; the business being continued by complainant as agent of decedent's wife and children. *Held*, that complainant's continuance of the use of decedent's trade-marks and dress of package, without anything to show that the goods were no longer made under the personal supervision of decedent, tended to mislead the public, and therefore precluded him from maintaining a bill for infringement.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 94; Dec. Dig. § 85.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 101*)—COMPLAINT—DISMISSAL—COSTS.

Where complainant's bill to restrain infringement of certain trade-marks was dismissed because complainant's use of the trade-marks was calculated to deceive the public, but the proof showed a flagrant and shameless case of pirating on defendants' part, no costs would be allowed.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 115; Dec. Dig. § 101.*]

In Equity. Bill by Howard Hazlett, as administrator of Augustus Pollack, deceased, against the Pollack Stogie Company and others to restrain alleged infringement of complainant's trade-marks and for unfair competition. Bill dismissed.

Brown & Stewart, for plaintiff.

Ivory, Kiskaddon & Moore (Frank F. Reed and Edward S. Rogers of counsel), for defendants.

BUFFINGTON, Circuit Judge. This is a bill in equity brought by Howard Hazlett, administrator of Augustus Pollack, deceased, against the Pollack Stogie Company and others. It is alleged respondents infringe complainant's trade-marks and charges them with unfair competition. The case is on final hearing.

[1] The proofs show that for some 35 years prior to his death, in 1906, Augustus Pollack, the decedent, had built up a large and profitable interstate trade in a species of cigars called "stogies." He used high-grade tobacco and placed on the packages containing his goods marks and labels that gave them a distinct and recognizable dress and appearance. Indeed, so extensively and favorably did his goods become known that the name "Pollack's Stogies," and indeed the word "Pollack" alone, came to be generally connected with the cigars made by him. Among other distinctive marks was his guaranty, signed in

script over his reproduced signature, viz., "The best and largest natural leaf handmade long Havana seed filler cigar in the world at the price. Each cigar guaranteed perfect by." Then follows the script signature, "Augustus Pollack." The manufacturer's factory certificate on the package also stated that Augustus Pollack was the manufacturer in factory No. 88, First district, state of West Virginia, and on the front of his factory, which constituted his principal trademark, was the name of Augustus Pollack as manufacturer. The proofs in testimony, correspondence, etc., undoubtedly show that the personality of Pollack, his thorough knowledge of his business, his deep personal interest in it, and his integrity of purpose in a careful and scrupulous use of high-grade material were the important factors in creating and maintaining the trade good will of his product. So thoroughly were the name and personal guaranty of Pollack recognized that those who succeeded him in business and who bring this present suit, in 1908, two years after his death, sent out to the trade a letter, printed in script and purporting to be signed by Augustus Pollack, in which, after calling attention to the development of his business, Mr. Pollack is made to say that he "gratefully acknowledges his indebtedness to American encouragement, and requesting a continuance of approval and favorable consideration, avails himself of this occasion to tender his assurance of appreciation and high esteem. Yours truly. Augustus Pollack."

It will thus be seen that the personality of Pollack was a factor in the creation and the retention of the trade good will which his product enjoyed. The fact, however, is that after the death of Mr. Pollack, and up to the filing of this bill, these marks, labels, and statements as made by Mr. Pollack were used on the packages in precisely the same way they had been used by him in his lifetime and in spite of the fact that his business was being carried on by Howard Hazlett, as the agent of his wife and children, and not for the benefit of his estate or in pursuance of the usual duties of an administrator, as noted below.

The will of Augustus Pollack was inoperative because not properly executed. Letters of administration on his estate were granted Howard Hazlett, the complainant. By written agreement of Mr. Pollack's wife and children, approved and confirmed in a chancery proceeding in the circuit court of Ohio county, W. Va., brought by Howard Hazlett, administrator, against the estate, the widow and children agreed the administrator should carry out the will, with certain exceptions, as though such will were in force, and by such instrument they further empowered Mr. Hazlett to conduct the business of Mr. Pollack, not for the benefit of the estate, but for themselves by these provisions, inter alia:

"That the said complainant, as administrator aforesaid, is empowered to continue the business for a limited time under the testator's name. * * * It is further adjudged, ordered, and decreed that the capital and property used in such business are not to be included in the semiannual divisions to be made by the said complainant as directed in said will, but the whole of such capital and property used in such business are to remain in the said business until the end of the last-mentioned period of 10 years and then be

distributed. \* \* \* It is further adjudged, ordered, and decreed that, under the twenty-fifth section of the said will, the said complainant, as administrator as aforesaid, is empowered to sell and dispose of the factories, good will, equipments, and materials and stock on hand, and that in doing so he is not to consider or be controlled in any way by the provisions in the said twenty-fifth section of the will relating to the integrity of the firm name and of the product and the recognition of organized labor and the wage scale."

The public by such unchanged marking of the goods was led to believe that the goods were being made and guaranteed by Mr. Pollack. It is true that sometime after this bill was filed an inconspicuous label was placed on packages stating the goods were made by Pollack's administrator; but even this statement continued still to be accompanied by prominent labels stating: "None genuine without my signature. Augustus Pollack." And that the goods are "manufactured of select air cured and fermented Pennsylvania tobaccos and. packed in good shipping order by Augustus Pollack, Wheeling, W. Va."

In view of these facts, can the present bill be maintained by the complainant? Without imputing to complainant any bad faith or intent to deceive the public, we are of opinion that under the facts stated the law forbids the maintenance of his bill. One of the essentials of an enforceable trade-mark right is that the goods it represents shall in no way mislead the public. When a manufacturer has by his personal skill or character built up a reputation or good will for his goods which gives them a higher value than those of other makers, it is quite clear that he cannot transfer to others the right to affix his name to those goods when he has ceased to manufacture them, and his transferee mislead the public into the belief that the skill and character which gave the product distinctive merit still continue to do so. Under such circumstances, fairness to the public demands that he who succeeds to the manufacture of a product of earned personal repute must in some appropriate manner apprise the public of the changed condition. Thus in Manhattan Co. v. Wood, 108 U. S. 223, 2 Sup. Ct. 439 (27 L. Ed. 706), it is said:

"The object of the trade-mark being to indicate, by its meaning or association, the origin or ownership of the article, it would seem that when a right to its use is transferred to others, either by act of the original manufacturer or by operation of law, the fact of transfer should be stated in connection with its use; otherwise a deception would be practiced upon the public, and the very fraud accomplished, to prevent which courts of equity interfere to protect the exclusive right of the original manufacturer. If one affix to goods of his own manufacture signs or marks which indicate that they are the manufacture of others, he is deceiving the public and attempting to pass upon them goods as possessing a quality and merit which another's skill has given to similar articles, and which his own manufacture does not possess in the estimation of purchasers. To put forth a statement, therefore, in the form of a circular or label attached to an article, that it is manufactured in a particular place, by a person whose manufacture there had acquired a great reputation, when, in fact, it is manufactured by a different person at a different place, is a fraud upon the public which no court of equity will countenance."

So, also, in Leather Co. v. American Company, postea, it is said:

"When the owner of the trade-mark applies for an injunction to restrain the defendant from injuring his property by making false representations to the public, it is essential that the plaintiff should not in his trade-mark, or

in the business connected with it, be himself guilty of any false.or misleading representation; for, if the plaintiff makes any material false statement in connection with the property he seeks to protect, he loses, and very justly, his right to claim the assistance of a court of equity. * * * Where a symbol or label, claimed as a trade-mark, is so constructed or worded as to make or contain a distinct assertion which is false, I think no property can be claimed in it, or, in other words, the right to the exclusive use of it cannot be maintained."

The facts of the present case bring it within these rulings. The right of Augustus Pollack has been transferred by operation of law to his wife and children, and they have empowered Hazlett as their representative to continue the business. But unfortunately it has been continued, not according to existing facts and conditions and with appropriate notice of the succession, but precisely as if the personal service and skill of Augustus Pollack were still directing it, and indeed his name and signature have been actively used as if he were still living. On the authority of these cases, and in view of the facts referred to, it is clear that this bill cannot be sustained.

[2] We deem it proper to expressly say that the absence of conditions to warrant sustaining the complainant's bill, and not the existence of any merit on the part of respondents' case, leads to our dismissal; for it should be added that the proofs of the case show such a flagrant and shameless case of pirating an established business that, in dismissing the bill, we follow the course pursued in the Leather Cloth Co. v. American Leather Cloth Co., 4 De G., J. & S. 137, affirmed in 11 H. L. C. 521, where Lord Chancellor Westbury said:

"As I do not approve of the conduct of the defendants, I dismiss it without costs."

Let a decree be prepared accordingly.